**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FREDDY LOPEZ,<br><br>*Plaintiff*,<br><br>v.<br><br>ALLURE GENERAL CONTRACTING, BAYONNE MUSLIMS ABDUL HAMEED, MOHAMMED ASIM KHAN, USA GENERAL CONTRACTORS CORP. and SKYREACH CONSTRUCTION INC,<br><br>*Defendants*. | Civil Action No. 21-8149<br><br>**OPINION**<br><br>November 17, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court upon the Motions for Reconsideration pursuant to Local Civil Rule 7.1(i) filed by Plaintiff Freddy Lopez ("Plaintiff") and Mohammed Asim Khan ("Khan.") (ECF Nos. 193-2, "Plaintiff's Motion" or "Pl. Mot. Rec."; 194-2 "Khan Brief" or "Khan Br.") Plaintiff seeks reconsideration of this Court's August 3, 2026 Opinion, (ECF 184, "Opinion" or "Op."), granting the Motions for Summary Judgment filed by Defendants Allure General Contracting ("Allure"), Bayonne Muslims Abdul Hameed ("Bayonne Muslims"), and USA General Contractors Corp ("USA General.") (*See* ECF Nos. 154, 157, 159) Khan seeks reconsideration of the Court's Opinion denying his Motion for Summary Judgment. (ECF 155, "Khan Summary Judgment Motion" or "Khan MSJ.") This matter was decided by the Court upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, both Motions for Reconsideration are **DENIED**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff alleges he was injured while performing construction work on the roof of 109 East 24th Street, Bayonne, New Jersey 07002 (hereinafter the "Premises") on August 6, 2020, and was allegedly "caused to fall" from the roof. (ECF 52, "Third Amended Complaint" or "TAC" ¶ 36.) Approximately one year before Plaintiff's accident, Defendant Bayonne Muslims began converting a warehouse at 107–113 East 24th Street, Bayonne, New Jersey, into a mosque. (ECF 154-2, "Allure SUMF" ¶¶ 1–2.) Defendant Khan, a volunteer and member of Bayonne Muslims' committee, was the self-described "point person" for all trades. (ECF 159-1, "USA General Mot." ¶ 5; *see* ECF 155-8, "Khan Dep." 27:15–19.) Khan obtained permits on Bayonne Muslims' behalf, scheduled contractors, and hired Skyreach Construction, Inc. ("Skyreach") to complete the roofing work. (ECF 164-2, "Opposition" or "Opp." at 20; Khan SUMF ¶ 41; Bayonne SUMF ¶ 8; *see* ECF 193-4, "Akbar Dep." 79:6–12, 82:2–23.) Despite this oversight role and his engineering credentials, Khan lacked Occupational Safety and Health Administration "OSHA" certification and "failed to implement or monitor essential basic safety protocols" according to the Plaintiff's expert report. (*See* ECF 178-4, "Report" or "Rep." at 10, ¶ 25.)

On the morning of August 6, 2020, rainfall prevented Plaintiff from beginning scheduled work for USA General, so he was instead permitted to work for Skyreach at a separate location, the Premises. (USA General Mot. at 6, ¶13.) Skyreach hired Plaintiff as a day laborer to remove

[1] The facts and procedural history are drawn from Plaintiff's Third Amended Complaint, (ECF 152, "Third Amended Complaint" or "TAC"); Defendants' briefs in support of their Motions for Summary Judgment, (ECF Nos. 154, 155, 157, 159); Plaintiff's consolidated opposition brief, (ECF 164, "Opposition" or "Opp."); the parties' submissions regarding undisputed material facts ("SUMF"), (ECF Nos. 154-2, "Allure SUMF"; 155-2, "Khan SUMF"; 157-2, "Bayonne SUMF"); and the briefs accompanying the parties' motions for reconsideration, (ECF 193-2, "Pl. Mot. Rec."; 194-2, "Khan Br.")

leftover materials and debris from the roof after prior work on the Premises had been completed. (*Id*. at 2; Opp. at 1.) Plaintiff fell while carrying plywood to the roof's edge. (Bayonne SUMF ¶ 26.) The exact circumstances of Plaintiff's fall are in dispute. (*Id*. ¶ 27.) Plaintiff alleges that Defendants' negligence in owning, managing, controlling, and renovating the Premises caused him serious physical and psychological injuries, to which he did not contribute, and that he has been unable to work as a result. (TAC ¶¶ 87, 90–91.)

Modesto, a USA General foreman for eighteen years, testified that he was the "senior person" for the roof work on the day of Plaintiff's injury. (Khan SUMF ¶ 12; Allure SUMF ¶ 33.) Although a USA General foreman, Modesto worked at the Premises in his professional capacity for Skyreach. (Khan SUMF ¶ 14.) Skyreach always paid Plaintiff in cash, and after the accident, Modesto gave Plaintiff an envelope of cash from Hassan Elfeky, owner of Skyreach, for one and a half days' work. (*Id*. at 6, ¶ 11.)

Around the time of the incident, Khan also hired Allure to work on the "sidewalks, curbs, and underground utilities" at the Premises. (Allure SUMF ¶ 12.) Although Allure was the contractor of record for construction at the Premises, its permits did not cover roof work. (*Id*. ¶¶ 10–11.) Mohd Odeh, Allure's principal and owner, testified that Allure's team was not at the Premises on the day of the incident. (*Id*. ¶ 34.) Plaintiff had never met Odeh, nor considered himself an employee of Allure. (*Id*. ¶¶ 35–36.)

On December 3, 2025, Allure moved for summary judgment. Khan moved on December 4, 2025; and USA General and Bayonne Muslims moved on December 5, 2025. (*See* ECF Nos. 154, 155, 157, USA General Mot.) Plaintiff filed a consolidated opposition brief in response to the Motions on January 5, 2026. (*See* Opp.) On May 28, 2026, Bayonne Muslims filed a Motion to Preclude Report and Testimony of Plaintiff's Expert. (ECF 178.) Plaintiff opposed on June 11,

2026. (ECF 179.) On the same day, USA General filed a cross-motion to join Bayonne Muslims' Motion to Preclude. (ECF 180.) Bayonne Muslims replied to Plaintiff's preclusion opposition brief on June 29, 2026. (ECF 182.) USA General did not join the preclusion reply. On August 14, 2026, Plaintiff moved for reconsideration of the Court's August 3, 2026, Opinion and Order granting summary judgment to Defendants Allure, Bayonne Muslims, and USA General. (*See* Pl. Mot. Rec.) Khan moved for reconsideration of the Court's August 3, 2026 Opinion and Order on August 17, 2026. (*See* Khan Br.) Allure and Bayonne Muslims opposed Plaintiff's Motion for Reconsideration on August 25, 2026, and USA General opposed on August 26, 2026. (*See* ECF Nos. 198, 199, 201.) Plaintiff opposed Khan's Motion for Reconsideration on August 28, 2026. (ECF 202.)

## II. LEGAL STANDARD

A party may move for reconsideration of a previous order if there are "matter[s] or controlling decisions which the party believes the Judge has overlooked." L. Civ. R. 7.1(i). Motions for reconsideration are "extremely limited procedural vehicle(s)" that are to be granted "very sparingly." *Clark v. Prudential Ins. Co. of Am.*, 940 F. Supp. 2d 186, 189 (D.N.J. 2013) (quotation marks omitted). A motion for reconsideration is inappropriate when a party merely disagrees with a court's ruling or when a party simply wishes to re-argue or re-hash its original motion. *Sch. Specialty, Inc. v. Ferrentino*, No. 14-4507, 2015 WL 4602995, at *2–3 (D.N.J. July 30, 2015); *see also Florham Park Chevron, Inc. v. Chevron U.S.A.*, 680 F. Supp. 159, 162 (D.N.J. 1988). A motion for reconsideration may only be granted if the moving party shows "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [reached its original decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011)

(quotation marks and italics omitted). A court commits a clear error of law "only if the record cannot support the findings that led to that ruling." *ABS Brokerage Servs. LLC v. Penson Fin. Servs., Inc.*, No. 09-34590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010) (citing *United States v. Grape*, 549 F.3d 591, 603–04 (3d Cir. 2008)).

## III. ANALYSIS

### A. Plaintiff's Motion for Reconsideration

#### 1. Allure General Contracting

As a threshold matter, reconsideration is appropriate only when the movant presents new controlling law, newly available evidence, or a court's clear error of law or fact to prevent manifest injustice. *Blystone*, 664 F.3d at 415. Plaintiff fails to raise grounds for reconsideration and instead merely reargues the record.

Plaintiff argues reconsideration is warranted as to Allure because the Court improperly treated "the absence of a direct employment relationship and the permit's lack of express roofing language as dispositive." (Pl. Mot. Rec. at 14.) Plaintiff maintains that Allure's status as contractor of record and the permit bearing both Khan's and Allure's signatures raise a question of control. (*Id.* at 13–14.) Plaintiff argues that since Odeh testified that Khan directed and approved Allure's work, which supports Plaintiff's position that Khan acted as a *de facto* general contractor, there is an outstanding question as to Allure's role and duty under general negligence principles. (*Id.* at 14.) Furthermore, Plaintiff notes that New Jersey's duty analysis does not depend exclusively on formal contract labels. (*Id.* at 14.) Plaintiff relies on *Alloway v. Bradlees*, 723 A.2d 960 (N.J. 1999), and *Costa v. Gaccione*, 975 A.2d 451 (N.J. Super. Ct. App. Div. 2009), to argue that Allure owed a duty under general negligence principles because the record supports foreseeability, a relationship between the parties, and Allure's opportunity to take corrective

measures. (*Id*. at 14.) Plaintiff further argues that, under *Costa*, shared control of the accident site is a jury issue. (*Id*.)

Plaintiff's consolidated opposition brief addressed these same issues, including the permits, insurance policy, and the parties' relationship. (Opp. at 4, 20–23.) Allure previously responded to the arguments presented by Plaintiff. (*See* ECF 167 at 4–7.) Allure argued that it owed no duty of care to Plaintiff, asserting that it was not in charge of the roofing work and Plaintiff's claims were frivolous because the insurance policy had no bearing on the case and the management arrangement created no risks. (*Id*.) Because Plaintiff merely repeats arguments the Court has already considered, reconsideration is unwarranted. *See Kadonsky v. Ahsan*, 782 F. App'x 87, 89 (3d Cir. 2019) (upholding a district court's denial of a motion for reconsideration on the grounds the plaintiff advanced the same arguments decided at summary judgment).

Moreover, the Court did not clearly err in concluding Allure owed him no duty. Whether a general contractor owes a duty of care to a subcontractor's employee depends on the foreseeability of harm, the parties' relationship, the nature of risk, the opportunity and ability to exercise care, and considerations of public policy and fairness. *Carvalho v. Toll Bros. & Devs.*, 675 A.2d 209, 212–13 (N.J. 1996). Whether a duty exists is a question of law for the Court. *Id.* at 212. Plaintiff does not properly analyze the *Carvalho* factors or explain how they warrant reconsideration or support imposing a duty on Allure. Plaintiff does not meaningfully address foreseeability, the nature of risk, Allure's opportunity to exercise care, or public policy and fairness.

Plaintiff has not shown that Allure had any opportunity to exercise care or control over the roofing work. Allure's permit documents indicate the tasks Allure was hired to perform, and roofing work is either not listed or left unchecked. (*See* ECF 193-9, "Bayonne Permit

Documents.") As Allure states in its opposition to Plaintiff's Motion for Reconsideration, "[t]he permit specifically lists rehabilitation of the Property as the type of work to be completed, and omits the section listed for roofing work." (ECF 198 at 5.) Although Plaintiff claims "[t]he Court acknowledged that Allure was certified as contractor of record for construction operations at the Premises" and cites to the Opinion at 4, (Pl. Mot. Rec. at 12), Plaintiff ignores the fact that the Court stated in that same sentence that Allure's "permits did not include a provision for roofing work." (Op. at 4.)

The Court did not misapply *Carvalho* in granting Allure's summary judgment motion. In *Carvalho*, the plaintiff was injured by a deep trench and the defendant's contract "provided for the specific possibility of unstable trench conditions and prescribed contractual duties addressed to those concerns." *Carvalho*, 675 A.2d at 213. The defendant also had clear responsibilities to ensure the conditions of the trenches were stable, "[t]rench conditions were specifically part of the engineer's contractual concerns and Stonebeck [Defendant's site representative] knew of the condition of the trench." *Id.* at 214. Here, Plaintiff fails to present facts similar to the conditions that imposed a duty on the defendant in *Carvalho*. Plaintiff fails to demonstrate that Allure supervised, participated in, or otherwise assumed control of the roof work under *Carvalho.*

Nor has Plaintiff shown a shared locus of control under *Costa*. In *Costa*, the owner hired and scheduled the subcontractors and architect, bought their materials, and discussed construction plans with them. *Costa*, 975 A.2d at 453, 458 He also frequently visited and oversaw the site, and never hired a general contractor. *See id.* Here, Odeh's testimony that Khan directed and approved Allure's work suggests that Khan, not Allure, controlled the work. (Pl. Mot. Rec. at 13–14.) Without control over the work that caused Plaintiff's injury, Allure lacked any meaningful opportunity to exercise care, and these factors weigh against imposing a duty on it.

The relationship between Allure and Plaintiff likewise does not support imposing duty. Plaintiff's argument centers on the relationship between Khan and Allure, not on any relationship between Allure and Plaintiff. (*See* Pl. Mot. Rec. at 12–14.) Plaintiff testified that he did not know Allure before the accident and never considered himself to be an employee of Allure. (ECF 157-6, "Lopez Dep." 128:12–129:10.) Plaintiff has not articulated how the relationship between Allure and Khan could have led to Allure controlling Plaintiff. Moreover, because Plaintiff was not working for Allure at the time of the injury, there is no contractual relationship between the parties to serve as the basis for a duty of care. *Cf. Alloway v. Bradlees, Inc.*, 723 A.2d 960, 965–66 (N.J. 1999) (considering contractual terms when determining the scope of a contractor's duty over the employee of a subcontractor). Plaintiff has not shown that Allure controlled the work that caused Plaintiff's injury or that Plaintiff's injury was foreseeable to Allure. The parties' relationship thus provides no basis for a duty.

The nature of risk and Allure's opportunity to exercise care factors turn on the same facts and further distinguish this case from *Carvalho*. The connection between Allure's responsibilities over the progress of work and safety measures at the job site is relevant in determining whether it is fair to impose a duty. *See Carvalho*, 675 A.2d at 214. Here, Plaintiff has not proved Allure's performance or oversight of the roof work. Allure therefore had no reason to know of the nature of the risks that the work presented and no practical opportunity to correct them. *See id*.

Even if the Court found the injury foreseeable, however, fairness and policy would still weigh against imposing a duty. "[T]he imposition of such a duty [must] satisf[y] an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Padilla v. Young Il An*, 315 A.3d 778, 782 (N.J. 2024) (quoting *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1116 (N.J. 1993)). Inquiry into fairness involves weighing and balancing several factors,

including "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution". *Id.* The analysis is "very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct." *Id.* As discussed above, Plaintiff did not present facts at the summary judgment stage which support a finding that Allure actually had the ability to exercise care over the roofing work or the risks inherent to it.

Finally, public interest factors weigh against imposing a duty. Plaintiff argues that New Jersey's duty analysis "does not depend exclusively on formal contract labels," (Pl. Mot. Rec. at 14), yet he rests his argument almost entirely on Allure's status as contractor of record. That status did not make Allure responsible for the roof work. (*See* Bayonne Permit Documents.) Imposing a duty based on that label alone would go against the public's interest in construction contracts clearly outlining the scope of liability, because Plaintiff has not shown that Allure knew of the risk, could have foreseen or discovered it, or was able to prevent the harm. *See Carvalho*, 675 A.2d at 214–15.

Plaintiff raises no new argument. The Court considered and rejected his contentions in the Opinion. (Op. at 11–13.) A party may not use a motion for reconsideration to reargue decided matters or to challenge the Court's reasoning. *See Sch. Specialty*, 2015 WL 4602995, at *2–3; *see also Florham Park Chevron*, 680 F. Supp. at 162. For these reasons, the Court properly held that Allure owed Plaintiff no duty of care. Plaintiff's Motion for Reconsideration of the Court's grant of summary judgment to Allure is therefore **DENIED**.

2. <u>Bayonne Muslims Abdul Hameed</u>

Plaintiff again fails to raise grounds for reconsideration. Plaintiff's Motion is inappropriate as it merely disagrees with the Court's ruling and seeks to re-argue or re-hash its original motion.

*See Sch. Specialty*, 2015 WL 4602995, at *3 ("A motion for reconsideration is improper when it is used 'to ask the Court to rethink what it has already thought through—rightly or wrongly."); *see also Florham Park Chevron*, 680 F. Supp. 159 at 162. Plaintiff argues reconsideration is warranted because Khan's disputed control may be attributed to Bayonne Muslims. (Pl. Mot. Rec. at 8.) Plaintiff argues the Court overlooked Khan's role as Bayonne Muslims' "project representative" in finding that control was relinquished to Skyreach. (*Id.* at 6.) Plaintiff claims that if a jury may find Khan controlled the project as Bayonne Muslims' "point person" it may also find Bayonne Muslims did not truly relinquish control. (*Id.* at 6–8.)

Plaintiff relies on *Muhammad v. New Jersey Transit*, 821 A.2d 1148 (N.J. 2003) and *Olivo v. Owens-Illinois, Inc.*, 895 A.2d 1143 (N.J. 2006), arguing that under New Jersey law, the independent-contractor landowner rule does not apply where the landowner retains control over the means and methods of the work. (Pl. Mot. Rec. at 7.) However, the Court considered and rejected Plaintiff's retained-control theory arguments in the Opinion. (*See* Op. at 18.) In New Jersey, landowners are presumed to have no duty to protect the employees of independent contractors from hazards inherent to their work. *Muhammad*, 821 A.2d at 1156; *see also Bussie v. Bloom Org.*, No. L-3593-03, 2007 WL 1425493, at *2 (N.J. Super. Ct. App. Div. May 16, 2007). Here, Bayonne Muslims hired Skyreach as an independent contractor to perform the roofing services through Khan. (Bayonne SUMF ¶ 7.) In doing so, this Court held Bayonne Muslims "relinquished control" over the means and methods of performing roofing work by retaining professionals to oversee those responsibilities. *See Muhammad*, 821 A.2d at 1154. Bayonne Muslims is therefore presumed to owe no duty of care to protect Skyreach's employees from the harms incidental to roofing work. *See Sutkowski v. Tymczyna*, No. L-2286-07, 2010 WL 4721156, at *2 (N.J. Super. Ct. App. Div. Nov. 23, 2010) ("Certainly, falling from a roof is a hazard

incidental to repairing a roof. Certainly, the plaintiff understood the hazards of the job which he agreed to accept.”).

Plaintiff has not overcome this presumption. As Plaintiff concedes in his Motion for Reconsideration, Khan was authorized by Bayonne Muslims to undertake all necessary duties to complete the project. (Pl. Mot. Rec. at 6, “Bayonne Muslims bestowed on Khan authority to take necessary actions on behalf of . . . the construction project.”) Akbar’s deposition testimony suggests that Khan was selected by Bayonne Muslims precisely because Bayonne Muslims did not have the expertise or knowledge to be in control of the construction project. (*See* Akbar Dep. 17:22–18:7 (“[Khan’s] role was to provide his expertise because I know he’s in the construction business[.]”).) The record supports a finding that Khan was given free range by Bayonne Muslims to take the actions needed to complete the project, and Plaintiff has not shown Bayonne Muslims “controlled” Khan when it was Khan that made all decisions related to obtaining permits, hiring subcontractors, and contractor scheduling. (Pl. Mot. Rec. at 6–7.)

Furthermore, *Olivo* is highly distinguishable from this case. The New Jersey Supreme Court in *Olivo* imposed a duty on the landowner-defendant because of the defendant’s decades-old knowledge that exposure to asbestos dust was associated with asbestosis, and a report that specifically detailed the hazards asbestos dust presented to the defendant’s specific industry. *See* 895 A.2d at 1149. This knowledge supported the court’s foreseeability determination in which it held the defendant “owed a duty to workers on its premises for the foreseeable risk of exposure to friable asbestos and asbestos dust[.]” *Id.* Here, the record does not show that Plaintiff’s injury

arose from a hazard incidental to the Premises which Bayonne Muslims was or should have been aware of. Thus, the factual disputes that precluded summary judgment in *Olivo* are absent here.[2]

Plaintiff offers no evidence that Bayonne Muslims undertook efforts to supervise safety or that it created or maintained the hazard that caused Plaintiff's injuries. Based on the record, the Court concludes that no reasonable jury could find that any of the exceptions to the landowner premises liability doctrine apply in this case. For the foregoing reasons, the Court properly held that Bayonne Muslims owed Plaintiff no duty of care. Plaintiff's Motion for Reconsideration regarding Bayonne Muslims is accordingly **DENIED**.

3. USA General

Plaintiff argues the Court's grant of USA General's motion for summary judgment warrants reconsideration because the Court erroneously "treated economic benefit as dispositive." (Pl. Mot. Rec. at 9.) Plaintiff relies upon an independent-duty theory, arguing USA General owed a duty because Plaintiff and Modesto were USA General employees, USA General provided OSHA training, Modesto supervised the work done on the Premises, USA General's van and equipment were at the Premises, and allowing the side job created an unsafe situation because safety responsibilities were unclear. (*Id*. at 9.) Plaintiff argues a reasonable jury could find a duty based on control, supervision, equipment, safety training, and USA General's ability to prevent the unsafe condition. (*Id*. at 10–11.) Plaintiff relies upon *Carvalho*, requiring courts to weigh foreseeability, the parties' relationship, the nature of the risk, the opportunity and ability to exercise

[2] Plaintiff also relies on Khan's post-summary judgment brief to support his argument. However, Plaintiff has not presented any authority supporting his position that Khan's post-summary judgment filings can be appropriately considered upon a motion for reconsideration. As a general rule, "[w]here particular evidence was not in the record when the district court decided a summary judgment motion 'a party may not submit that evidence in support of a motion to reconsider a grant of summary judgment.'" *Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, No. 05-2535, 2012 WL 3279243, at *4 (E.D. Pa. Aug. 13, 2012) (quoting *Pavlik v. Lane Ltd./Tobacco Exps. Int'l*, 135 F.3d 876, 882 n.2 (3d Cir. 1998)).

care, and public policy. (*Id.* at 11.) Plaintiff argues that, even if USA General disputes whether its conduct satisfies the loaned-employee doctrine, the absence of a direct invoice or proof of profit does not resolve whether USA General owed an independent duty. (*Id.*)

Plaintiff's Motion for Reconsideration raises arguments the Court has already addressed. Plaintiff brought its argument that USA General is liable in this action under the "loaned employee" theory. (Opp. at 31.) As stated in this Court's Opinion, the loaned employee theory requires a plaintiff to demonstrate *both* control *and* business furtherance. (*See* Op. at 14–15;) *Galvao v. G.R. Robert Const. Co.*, 846 A.2d 1215, 1221 (N.J. 2004) ("If the general employer did exercise such control, however, then it must be ascertained whether the special employee furthered the business of the general employer."). The business furtherance prong requires the general employer (in this instance, USA General) to have contemplated the work to be performed *and* derive an economic benefit by loaning its employee. *Galvao*, 846 A.2d at 1221. Plaintiff has not established that a loaned-employee relationship existed. Although the facts may suggest USA General exercised broad control over the alleged loaned employee, as the Opinion noted, the business-furtherance prong is not met, and therefore USA General's lack of economic benefit is dispositive as to the retained-employee theory. (*See* Op. at 14–16.)

Plaintiff's independent duty argument under *Carvalho* is similarly unpersuasive. He has presented no facts suggesting USA General ever contemplated roofing work at the Premises or showing how it could have been aware of the risk of harm at the Premises. (*See* ECF 159-6, "Serevetas Deposition" or "Serevetas Dep." at 16:7–16.) No party in discovery has presented an invoice allegedly issued by USA General for work performed at the Premises. (ECF 159-10, "Certification of Randall S. Bruckman" or "Bruckman Cert." ¶ 15; ECF 168 at 9.) Further, although roofing work carries an inherent risk of falls, *see Sutkowski*, 2010 WL 4721156, at *2,

that risk does not support imposing a duty on a party with no connection to the work at the Premises. Without any involvement at the Premises, USA General had no opportunity or ability to exercise care or control the work, and imposing a duty on USA General would contravene fairness and public policy. *See Costa*, 975 A.2d at 456 (holding considerations of fairness and public policy preclude imposing tort liability on defendants "[w]ithout foreseeability of the accident and any relationship implicating safety concerns[.]").

For the foregoing reasons, the Court properly held that USA General owed Plaintiff no duty of care. Plaintiff's Motion for Reconsideration of the Court's grant of summary judgment to USA General is **DENIED**. [3]

4. <u>Plaintiff's General Arguments</u>

In addition to the defendant-specific arguments raised above, Plaintiff makes arguments general to the Court's adjudication of the summary judgment motions. Plaintiff takes issue with "[t]he Court's framing of the hazard as merely 'falling from a roof'" rather than Plaintiff's "unsafe-system-of-work theory" and argues "[t]he Court overlooked that the expert report was admitted for the precise issues that make summary judgment inappropriate." (Pl. Mot. Rec. at 15, 18.) Plaintiff also argues "[t]he Court should vacate summary judgment to preserve consistent fault allocation." (*Id.* at 19.) The Court finds that these arguments do not warrant rigorous discussion upon a motion for reconsideration because none of these arguments raise newly available evidence,

[3] Plaintiff also argues in his Motion for Reconsideration that that the Court "overlooked that the absence of a formal general contractor created a responsibility vacuum[.]" (Pl. Mot. Rec. at 17.) However, this argument was expressly discussed by the Court in the Opinion, in which the Court held "the decision by a landowner to not hire a general contractor does not violate New Jersey law per se." (Op. at 11 n.3 (citing *Slack v. Whalen*, 742 A.2d 1017, 1022 (N.J. Super. Ct. App. Div. Jan. 10, 2000)).)

an overlooked or incorrect application of the law, or newly decided relevant case law. *See Blystone,* 664 F.3d at 415. The Court will therefore only briefly address each argument in turn.

First, the Court previously addressed Plaintiff's argument that it improperly narrowed the scope of the alleged injury to simply falling off a roof. (Pl. Mot. Rec. at 15.) The Court clarifies it did not grant Bayonne Muslim's summary judgement motion solely because it found that the danger of falling from a roof is inherent in roofing work. Rather, the Court reasoned that granting Bayonne Muslims' summary judgment motion was warranted because Plaintiff failed to raise facts showing that Bayonne Muslims *retained control* over the roofing work. (*See* Op. at 17–19.) Without retained control over the worksite, the Court observed that landowners are not responsible for hazards incidental to the work performed under the landowner premises-liability rule articulated in *Muhammad*. *See* 821 A.2d at 1156. The Court held, "Bayonne Muslims 'relinquished control' over the means and methods of performing roofing work . . . Bayonne Muslims is therefore presumed to owe no duty of care to protect Skyreach's employees from the harms incidental to roofing work." (Op. at 18.) Rather than overlooking any argument, the Court specifically addressed all of the theories Plaintiff put forward to allege an exception to the landowner premises-liability rule, including Plaintiff's (1) retained control theory; (2) dangerous conditions theory; (3) "[u]ndertake to supervise safety" theory; and (4) inherently dangerous activities theory. (*See id.* at 18–19; Opp. at 10.) Furthermore, throughout the Opinion, the Court rejected Plaintiff's claims that any of the dismissed defendants had a duty to ensure a safe jobsite in the first place, which is Plaintiff's burden to establish. *See V.C. by Costello v. Target Corp.*, 454 F. Supp. 3d 415, 423 (D.N.J. 2020) ("[P]laintiffs must prove . . . defendant owed plaintiff a duty[.]"). In summary, the Court finds that it did not improperly limit the scope of the alleged harm and sufficiently addressed all of Plaintiff's theories of liability. Even if Plaintiff did allege

an "unsafe-system-of-work" theory, Plaintiff failed to establish that any of the dismissed Defendants owed Plaintiff a duty to a safe workplace.

As for the argument that the Court should vacate summary judgment to preserve consistent fault allocation, Plaintiff has cited no case law that presents this as an acceptable basis to deny summary judgment. Plaintiff cites to *Alloway*, *Costa*, *Muhammad*, *and Olivo* in this section, all of which have been sufficiently discussed upon reconsideration. (*See supra* Part (III)(A)(1–3).) The crux of Plaintiff's argument is "[t]he record supports different but interrelated theories: Bayonne Muslims retained control through Khan . . . Allure's permit/contractor identity was used to structure the project [and] USA General's foreman directed the work at the roof [as a retained employee]." (Pl. Mot. Rec. at 19.) These arguments were specifically addressed above.

Lastly, the Court rejects Plaintiff's argument that that because his expert report was admitted, the Court cannot grant summary judgment to the dismissed defendants. (*Id*. at 18.) To put it simply, the standard for admitting an expert report is different than Plaintiff's burden of proof to establish duty.[4] As discussed in the Opinion, the Third Circuit has held that district courts should adopt a "liberal policy of admissibility extend[ing] to the substantive as well as the formal qualification of experts." *Paoli II*, 35 F.3d at 741. In analyzing an expert report, the Court assesses the *Daubert* factors of admissibility under Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–591 (1993). These factors turn on the qualifications, reliability, and fitness of the expert. *Paoli II*, 35 F.3d at 741–43. The Court's role at summary

[4] *See K.J. v. J.P.D.*, 659 F. Supp. 3d 471, 478 (D.N.J. 2023) ("To sufficiently state a claim for negligence . . . a plaintiff must allege the defendant breached a duty of care . . . . [A] duty to exercise reasonable care . . . is a question of fairness and policy that implicates many factors." (internal quotations omitted)). *Cf. In re Paoli R.R. Yard PCB Litig.* (*Paoli II*), 35 F.3d 717, 742 (3d Cir. 1994) ("[A] district court should take into account all of the factors listed by either *Daubert* or *Downing* as well as any others that are relevant [in analyzing an expert report].").

judgment is "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). This entails assessing whether the movant has shown there is no "genuine dispute of material fact" at issue. *Qin v. Vertex, Inc.*, 100 F.4th 458, 469 (3d Cir. 2024). Plaintiff inappropriately "asks the Court to rely on *Corrado* for what the Court already held admissible[.]" (Pl. Mot. Rec. at 18.) However, even assuming the Court gave the expert report no weight, Plaintiff still does not show a clear error of law—admitting a report into evidence is not the same as determining the statements asserted in the report are compelling evidence. *See HFGL Ltd. v. Alex Lyin & Son Sales Managers & Auctioneers, Inc.*, 264 F.R.D. 146, 149 (D.N.J. 2009) (holding that by ruling not to strike an expert report, the Court "makes no judgment as to the weight, if any, it may give to [the] report").

**B. Defendant Khan's Motions for Reconsideration**

Khan moves for reconsideration purportedly to correct a clear error of law and prevent manifest injustice. (Khan Br. at 4.) He contends that the record establishes that he, a civil engineer, volunteered his time, expertise, and contacts without compensation to help Bayonne Muslims renovate a building into a cultural and religious center. (*Id.*) Khan argues he acted as Bayonne Muslims' "agent" and therefore qualifies for protection under N.J. Stat. Ann. § 2A:53A-7.1(a) of New Jersey's Charitable Immunity Statute.[5] (*Id.* at 4, 11.) He asserts that holding him personally liable would contradict that protection. (*Id.*) Khan further maintains he may qualify for coverage under Bayonne Muslims' commercial general liability policy if he is deemed an agent. (*Id.*) As a threshold matter, Khan did not raise charitable immunity in his motion for summary judgment.

[5] The Court notes that in his deposition, Waheed Akbar of Bayonne Muslims stated, "I'm not sure when you say agent, but, yeah, he was one of our members dealing with the city" in response to a question asking "[w]ould you agree that Asim Khan you authorized to be an agent to go take these permits?" (Akbar Dep. 82:8–16.)

(*See generally* Khan MSJ) A motion for reconsideration is not a vehicle for raising arguments that could have been raised before the Court's original decision. *See Blystone*, 664 F.3d at 415. Khan identifies no reason he could have not raised immunity earlier, and the Court declines to consider it now. Because the argument is not properly before the Court, the Court need not address Plaintiff's opposition to it. (ECF 202 at 10–11.) *See D'Argenzio v. Bank of Am. Corp.*, 877 F. Supp. 2d 202, 210 (D.N.J. 2012) ("Generally, a [district] court should refrain from addressing new legal arguments raised for the first time on a motion for reconsideration.").

Khan agrees that the Court correctly granted Bayonne Muslims summary judgment under landowner-liability principles. (Khan Br. at 5); *See also Muhammad*, 821 A.2d at 1156. He claims that N.J. Admin. Code § 5:23–2.21 recognizes the architect or engineer under subsection (b), the responsible person in charge of the work under subsection (c), and the contractor under subsection (e) as distinct actors with separate duties. (Khan Br. at 6.) Khan reiterates, as he argued in his summary judgment reply brief, that Plaintiff wrongfully ascribes the contractor role to him, when he in fact served as the landowner's responsible person. (*Id.*; ECF 171 at 3–4.) Khan asks the Court to apply the same analysis it used to find Bayonne Muslims relinquished control to Skyreach to himself, arguing he acted as Bayonne Muslims' volunteer under common-law agency principles. (*Id.*) Furthermore, Khan argues that the factual record cannot support a finding that he exercised control over the roofing works. (*See id.* at 7–10.) Khan emphasizes that Bayonne Muslims did not hire a general contractor and instead relied on experienced community members like himself to serve as volunteers. (*Id.* at 7.)

Khan's arguments are unpersuasive. He reiterates throughout his brief that he received no compensation for volunteering his services to Bayonne Muslims, but does not point to any authority which considers volunteer-status or compensation as a factor relevant to determining a

defendant's duty of care. (*See id.*) He also claims that he did not know Skyreach would return to the Premises to remove debris on the day in question. (*Id* at 10.) However, Khan concedes that he had "advised Mr. Elfeky [of Skyreach] several times that Skyreach left construction debris in the parking lot of the property which needed to be cleared" which further supports the Court's conclusion that a genuine dispute of material fact remains as to whether Khan exercised control over the roofing work. (*Id.*)

As a threshold matter, the Court examines foreseeability of the risk of injury. *See Alloway*, 723 A.2d at 964. Khan argues that the factual record undercuts any finding of foreseeability or that he had the opportunity and ability to exercise care, making it unfair to impose duty on him. (Khan Br. at 10.) However, Khan fails to consider the potential broad control he exercised. While he claims "[t]here is no evidence in the record[] that [he] ever directed the manner or method of Skyreach's work on this project" the Court has made several findings to the contrary. (*Id.* at 9–10.) First, Khan's own Statement of Undisputed Material Facts, which was submitted with his summary judgment motion, states that "Mr. Khan ensured that Skyreach had workers' compensation insurance." (ECF 155-2 ¶ 41.) From this fact, a reasonable juror may conclude that an incident arising out of the roofing work was foreseeable to Khan. In fact, Plaintiff received a worker's compensation determination arising from the fall giving rise to the present action. (Lopez Dep. 147:20–148:2.) The Statement of Undisputed Material Facts submitted by Bayonne Muslims puts Khan's claim that "[t]here is no issue of fact that Skyreach was under contract with Bayonne Muslims, rather than Mr. Khan as a purported general contractor" into dispute. (Khan Br. at 10.) Bayonne Muslims represented that the contract with Skyreach was with Khan, "[p]er the agreement made between Skyreach and Khan . . . ." (Bayonne SUMF ¶ 8.) Bayonne Muslims further stated that "Bayonne Muslims did not enter into a written contract with Skyreach and the

only interactions between Bayonne Muslims and Skyreach simply involved payment for services rendered, as evidenced on the invoices Skyreach would submit." (*Id.* ¶ 9.) Furthermore, Khan discussed the project with Skyreach as early as 2019 and placed orders for building materials on behalf of Skyreach. (Khan Dep. 78:6–17; 82:3–13.) These facts support the Court's holding that Khan's control over the roofing work is disputed, and that the nature of the risk was foreseeable to him.

Khan also argues this case is distinguishable from *Alloway*, *Carvalho*, and *Costa* because he had no contractual relationship with, or pecuniary interest in, the Project. (Khan Br. at 9.) But as discussed, the record presents a dispute as to whether Khan entered into an agreement with Skyreach. (Bayonne SUMF ¶ 8; Khan Dep. 78:6–79:6.) Khan received an invoice from Skyreach "for the roofing work." (ECF 155-12.) This relationship may have created opportunities for Khan to exercise control over Skyreach's operations, including ensuring OSHA standards were met. (*See* Rep. at 10, ¶ 25 ("Asim Khan, acknowledging that the building committee had entrusted him with oversight responsibilities, and despite his professional engineering credentials, lacked OSHA certification and failed to implement or monitor essential safety protocols.").) For these reasons, a genuine issue of material fact exists as to Khan's role during the construction project. While the Court cannot conclude that each of the *Carvalho* factors falls in favor of imposing liability on Khan, there are sufficient facts in the record to dispute their applicability to Khan. (Op. at 20.) [6]

---

[6] Separately, Khan contends the Court found that Plaintiff proximately caused his own injury, citing Plaintiff's loss of footing, knowledge of the rainfall, and decision not to use the available mops. (Khan Br. at 11.) Khan claims that none of these failures can or should be attributed to Khan. (*Id.*) As the Court noted in the Opinion, Plaintiff must first prove at trial the facts establishing that Khan owed him a duty, and then must prove that Khan's conduct actually and proximately caused his injuries. (Op. at 22); *See Costa*, 975 A.2d at 457–59 (holding a general dispute of material fact as to whether defendant was *de facto* general contractor, the foreseeability of the plaintiff's injury, and the relationship between the parties precluded summary judgment); *see also Thorn v. Travel Care, Inc.*, 686 A.2d 1234, 1237 (N.J. Super. Ct. App. Div. 1997)

For the foregoing reasons, the Court properly held that genuine disputes of material fact regarding Khan's role in and control over the Project precluded summary judgment. Accordingly, Khan's Motion for Reconsideration is **DENIED**.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Reconsideration, (ECF 193), is **DENIED**, and the Court's grant of summary judgment in the favor of Defendants Allure, Bayonne Muslims, and USA General stands. Khan's Motion for Reconsideration, (ECF 194), is also **DENIED**, and the Court's denial of summary judgment as to Khan stands. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: José R. Almonte, U.S.M.J.
Parties

("[P]laintiff has the burden of proving by a preponderance of the evidence that a defendant's negligent conduct is a cause-in-fact of the plaintiff's injury."). This argument therefore provides no basis for reconsideration.